CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

August 01, 2025

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WALTER EDWARD BURTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:24-cv-00773 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SAMANTHA HUNT, *et al.*, | ) | By:  Hon. Thomas T. Cullen |
| | ) |      United States District Judge |
| Defendants. | ) | |

Plaintiff Walter Edward Burton, proceeding *pro se*, filed a civil-rights action asserting claims under 42 U.S.C. § 1983 against three employees of the New River Valley Regional Jail ("NRVRJ"). (*See* Compl. [ECF No. 1].) Defendants have jointly moved to dismiss Plaintiff's claims against them for failure to state a claim. (Defs.' Mot. to Dismiss [ECF No. 12].) For the following reasons, Defendants' motion to dismiss will be granted in part and denied in part.

I.

Plaintiff's claims stem from allegations[1] that each of the three Defendants—Nurse Samantha Hunt, Officer McGrady, and Officer Hardwick—were deliberately indifferent to Plaintiff's medical needs while he was incarcerated at NRVRJ. (*See* Compl. 2–5.) Specifically, Plaintiff alleges that, on January 14, 2024, he woke sometime between 7:30 and 8:00 a.m. with a painful erection. (*Id.* at 2.) When the erection persisted until noon, Plaintiff notified Officer Hardwick of his condition. (*Id.*) At approximately 12:30 p.m., Officer Hardwick told Plaintiff

---

[1] For purposes of deciding Defendants' motion to dismiss, the factual allegations of Plaintiff's complaint are taken as true. *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). Because the court relies on the sufficiency of these allegations and may not consider outside evidence in deciding Defendants' motion, Plaintiff's motions to submit evidence (ECF Nos. 19, 21) will be denied.

that the NRVRJ medical department advised Plaintiff to put in a "med slip" to be seen by medical staff, but Plaintiff could not do so until the nightly pill call between 7:00 and 8:00 p.m. that evening. (*Id.*)

Plaintiff continued to wait for his erection to pass. (*Id.* at 3.) At 6:20 p.m., when it had still not subsided, Plaintiff informed Officer McGrady of his condition. (*Id.*) McGrady told Plaintiff that he would call medical, and Plaintiff saw McGrady go into the office and make a phone call. (*Id.*) During McGrady's next round, Plaintiff asked McGrady what the medical department had said during his phone call with them. (*Id.*) McGrady, like Hardwick, advised Plaintiff to put in a med slip. (*Id.*) When Plaintiff expressed frustration at this response, McGrady apologized and told Plaintiff there was nothing else he could do. (*Id.*)

After 7:00 p.m., Plaintiff went into the officer booth and filled out a med slip on camera. (*Id.*) But Plaintiff decided not to wait to give the med slip to the nurse during the nightly pill call. Because Plaintiff's pain had grown so intense that he believed he "was go[ing] to] have a stroke," Plaintiff told Officer McGrady that he was having chest pains, knowing that, though untrue, such a claim would trigger immediate medical attention. (*Id.*) McGrady again called the medical department, and Plaintiff was quickly transported to medical. (*Id.*)

Upon arriving at medical, Plaintiff was seen by Nurse Samantha Hunt, who was already aware of Plaintiff's painful erection and its persistence throughout that day. (*Id.*) Plaintiff confessed that he was not having chest pains, so Hunt did not order an EKG. (*Id.*) After Plaintiff spoke to Hunt about his actual condition, Hunt sent Plaintiff to the emergency department at Carilion Hospital for treatment. (*Id.*)

Plaintiff arrived at the Carilion ER on January 14, where he underwent two procedures to remove excess blood and treat his condition. (*Id.* at 3–4.) Plaintiff claims he required two procedures was because the blood had dried and thickened due to the delay in receiving treatment. (*Id.* at 4.) Plaintiff remained at the hospital until 6:00 a.m. the next morning. (*Id.* at 3.)

On January 30, 2024, Plaintiff was sent to a urologist who offered him no satisfactory explanation as to what had caused this condition. (*Id.* at 4.) In the days and weeks following this episode, Plaintiff continued to experience sharp pain. (*Id.* at 4.) On May 24, 2024, he experienced a second painful erection. (*Id.*) At that time, he learned more about the condition—priapism—and that it was caused by a medication Plaintiff was taking. (*Id.*) Plaintiff claims that such occurrences require medical attention within four to six hours for proper treatment. (*Id.*)

NRVRJ staff now provides Plaintiff with regular does of Tylenol, which Plaintiff claims is causing pain in his kidneys and has interfered with his urinary function. (*Id.*) Aside from the second May 24, 2024 occurrence, Plaintiff has not had an erection since. (*Id.*) Plaintiff further claims that NRVRJ staff want Plaintiff to see a specialist, but Plaintiff alleges that such visits occur via videoconference and are unproductive. (*Id.*)

For his pain and suffering, Plaintiff seeks monetary relief from Defendants Hunt, McGrady, and Hardwick, and "better medical service at the jail." (*Id.* at 5.) Defendants have moved to dismiss Plaintiff's claims against them on the grounds that none of the individual Defendants acted with deliberate indifference to Plaintiff's medical needs. (*See* Memo. in Supp. of Defs.' Mot. to Dismiss [ECF No. 13].) Defendants' motion is ripe for review.

## II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible," a plaintiff's claim must be supported by factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although this "plausibility" standard is not akin to "probability," it does require "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citations omitted). Additionally, the court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (citations omitted). And, because Plaintiff is proceeding *pro se*, the allegations are construed "liberally" in his favor. *Shaw*, 59 F.4th at 127. "But where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief" as required by Rule 8. *Iqbal*, 556 U.S. at 679 (cleaned up).

Nevertheless, when a prisoner files his complaint *pro se*, the Court liberally construes the allegations in his favor and should not dismiss his claims unless "it appears certain that [he] cannot prove any set of facts in support of his claim entitling him to relief." *Shaw v. Foreman*, 59 F.4th 121, 126–27 (4th Cir. 2023). And when an action implicates civil-rights interests, the Court "must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Id.*

### III.

Plaintiff's claims arise under 42 U.S.C. § 1983, which authorizes a civil action by a citizen deprived of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. To state a claim under § 1983, a plaintiff must allege both (1) "the violation of a right secured by the Constitution and laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)).

The court construes Plaintiff's complaint as claiming that Defendants were deliberately indifferent to his medical needs. When a plaintiff was a pretrial detainee at the time of the alleged deliberate indifferent, the plaintiff's claims arise under the Fourteenth Amendment, which protects pretrial detainees from governmental actions that are "not rationally related to a legitimate nonpunitive purpose or that [are] excessive in relation to that purpose." *Jenkins v.*

*Woodard*, 109 F.4th 242, 250 n.3 (4th Cir. 2024) (quoting *Short v. Hartman*, 87 F.4th 593, 599); *see Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) ("[S]ince [the plaintiff] was a pretrial detainee and not a convicted prisoner, the Fourteenth Amendment, and not the Eighth Amendment, governs his claim.") (citations and internal quotation marks omitted). When the plaintiff was a convicted prisoner at the time of the alleged indifference, however, his claims arise under the Eighth Amendment's prohibition on cruel and unusual punishment. *See Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022) ("Because 'adequate . . . medical care' is a basic condition of humane confinement, a prison official's 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Plaintiff does not allege whether he was a pretrial detainee or a convicted prisoner at the time of the events described in the complaint. But Defendants have offered state court records showing that Plaintiff had been convicted and was serving a sentence for a probation violation at the time the relevant events occurred.[2] (*See* Ex. 1 to Memo. in Supp. of Defs.' Mot. to Dismiss [ECF No. 13-1].) Although the court ordinarily does not consider any outside materials in deciding a motion to dismiss, the court takes judicial notice of these publicly available court records. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting that "the most frequent use of judicial notice of ascertainable facts is in noticing the content of court records"). Considering these records, the court concludes that Plaintiff was a convicted prisoner at the time of the events described in the complaint, and his claims of

---

[2] In his response to Defendants' motion to dismiss, Plaintiff does not dispute Defendants' assertion that he was a prisoner rather than a pretrial detainee during the relevant period. (*See generally* Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss [ECF No. 22].)

deliberate indifference are therefore governed by the Eighth Amendment. *See Pfaller*, 55 F.4th at 445.

To establish a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment, a prisoner must allege facts sufficient to show that (1) the deprivation was sufficiently serious and (2) the prison officials acted with a sufficiently culpable state of mind toward the prisoner's medical needs. *Id.* (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). To satisfy the second prong, the plaintiff must allege that the official (a) had "actual knowledge of the risk of harm to the inmate" and (b) "recognized that his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs." *Id.* (citations omitted). Put simply, a defendant "acts with deliberate indifference if he had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." *Gordon v. Schilling*, 937 F.3d 348, 357 (4th Cir. 2019) (citing *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018)) And although the defendant need not act with "actual purposive intent," "mere negligence" is not enough. *Pfaller*, 55 F.4th at 445 (citation omitted).

Here, even liberally construing Plaintiff's complaint in his favor, Plaintiff has failed to allege facts showing that Defendants Hardwick and McGrady committed constitutional violations, and the Court must therefore dismiss his claims against those Defendants. Plaintiff's claim against Defendant Hunt, however, will proceed.

### A. Officers Hardwick and McGrady

Defendants Hardwick and McGrady challenge Plaintiff's claims against them on the basis that neither disregarded Plaintiff's medical needs but instead acted in a reasonable manner to address Plaintiff's concerns. (Memo. in Supp. of Defs.' Mot. to Dismiss 6–7.)

To state an Eighth Amendment claim against Hardwick and McGrady, it is not enough for Plaintiff to allege that they were subjectively aware of Plaintiff's medical needs. *Iko*, 535 F.3d at 242. Rather, "the officers must have *actually known that their response was inadequate* to address those needs." *Id.* (citing *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)) (emphasis in original). Here, the court agrees with Defendants that, even taking Plaintiff's allegations as true, Hardwick and McGrady did not act unreasonably under the circumstances.

"[A] nonmedical prison official can generally defer to the decisions of prison medical personnel at the institutional level[.]" *Gordon*, 937 F.3d at 358. Plaintiff plainly alleges that both Hardwick and McGrady sought direction from NRVRJ medical staff concerning Plaintiff's painful erection and acted in accordance with that advice. (*See* Compl. 2–3.) Plaintiff alleges that, after he told Hardwick about his condition, Hardwick informed Plaintiff that "medical said [to] put [a] med slip in," implying that Hardwick raised Plaintiff's concern with the NRVRJ medical department and advised Plaintiff according to the direction of that department. (*Id.* at 2.) Similarly, Plaintiff alleges that, after he told McGrady about his ongoing issue, McGrady "said he would call medical" and afterward also advised Plaintiff that medical said to put in a med slip in order to be treated. (*Id.* at 3.) When Plaintiff expressed lingering frustration, McGrady sympathized and told Plaintiff "there was nothing else he could do." (*Id.*) Given their positions as nonmedical personnel, it was not unreasonable for Hardwick and McGrady to defer to the instructions of prison medical staff after relaying Plaintiff's issues to the medical department. *Cf. Lowe v. Johnson*, No. 21-7443, 2023 WL 7179461, at *5 (4th Cir. Nov. 1, 2023) (affirming grant of summary judgment in favor of nonmedical prison officials who "forwarded [the inmate's] concerns to the prison's medical officials for review"). Though Plaintiff

expressed to each that he was in pain, nothing in Plaintiff's complaint indicates that Hardwick and McGrady knew of and consciously disregarded a risk that Plaintiff would need to undergo more invasive treatment if he was not seen promptly, especially given the medical department's repeated insistence, after being informed of his issue, that Plaintiff should wait and file a med slip.³ *See Gordon*, 937 F.3d at 358 ("To establish personal liability under § 1983 . . . the plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights.") (quoting *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018)).

Because Plaintiff's allegations do not plausibly contend that Hardwick or McGrady acted unreasonably or with a sufficiently culpable state of mind to deprive Plaintiff of his Eighth Amendment rights, the court will grant Defendants' motion to dismiss as to Plaintiff's claims against Hardwick and McGrady.

## B. Nurse Hunt

Defendants briefly argue that the claim against Nurse Hunt should be dismissed because Hunt did examine Plaintiff upon his arrival at the NRVRJ medical department and sent him to the hospital that same evening. (Memo. in Supp. of Defs.' Mot. to Dismiss 7.) Defendants' argument misses (or avoids) the substance of Plaintiff's claim, which stems not from the inadequacy of Hunt's actions *after* he feigned chest pains and was finally seen by the medical department, but from the unjustified and harmful delay in his being seen and receiving treatment. (*See* Compl. 2–4.) The Fourth Circuit has held that, while "commonplace medical

---

³ In his response in opposition to Defendants' motion to dismiss, Plaintiff concedes he feels that Hardwick and McGrady "did what they w[ere] suppos[ed] to do" by contacting the medical department. (Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss 3.) Though Plaintiff suggests they "probably could [have] d[one] more by informing the[ir] supervisors of [Plaintiff's] condition and medical's . . . refusal," he admits that he only named Hardwick and McGrady as Defendants "because the [42 U.S.C. § 1983 complaint] form had defendant spaces" and Plaintiff "assumed that's where the witness[es] would go as well." (*Id.*)

delay such as that experienced in everyday life will only rarely suffice to constitute an Eighth Amendment violation," such a violation does occur "where the delay itself places the prisoner at a 'substantial risk of serious harm,' such as where the prisoner's condition deteriorates markedly or the ailment is of an urgent nature." *Moskos v. Hardee*, 24 F.4th 289, 298 (4th Cir. 2022); *see also Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018) ("The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care.") (emphasis in original).

Plaintiff has alleged here that the *delay* in receiving treatment caused him additional pain and required more extensive, painful, and costly treatment than would have been required had his condition been treated sooner. (*See* Compl. 3–4.) He has also alleged that Hunt, who, unlike McGrady and Hardwick, was a trained medical professional, knew of his condition yet refused to allow Plaintiff to be evaluated sooner. (*Id.*) Taking Plaintiff's allegations as true, he has stated an Eighth Amendment claim for deliberate indifference to his medical needs against Defendant Hunt. Defendants' motion to dismiss will therefore be denied as to Plaintiff's claim against her.

## IV.

For the reasons set forth above, the court will dismiss Plaintiff's claims against Defendants Hardwick and McGrady, but his claims against Defendant Hunt survive.

The clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to Plaintiff.

**ENTERED** this 1st day of August, 2025.

>  /s/ Thomas T. Cullen
> HON. THOMAS T. CULLEN
> UNITED STATES DISTRICT JUDGE